**CONTROL DATA CORPORATION, Plaintiff,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant (two cases).**

**CONTROL DATA CORPORATION, Plaintiff,**

v.

**CUBIC–WESTERN DATA, Defendant.**

Civ. A. Nos. 75–0753, 77–1208 and 78–1465.

United States District Court, District of Columbia.

June 12, 1980.

Kent R. Morrison, Crowell & Moring, Washington, D. C., Michael Berens, Oppenheimer, Wolff, Foster, Shepard and Donnelly, Minneapolis, Minn., for plaintiff.

Leonard Petkoff, Washington, D. C., for Washington Metropolitan Area Transit Authority.

Richard A. Hibey, Surrey & Morse and N. Richard Janis, Janis, Schuelke & Wechsler, Washington, D. C., for Cubic-Western Data.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

### A.

Counsel for Cubic-Western Data have asked the Court to vacate its Order of January 17, 1980. That Order denied Cubic's motion to strike portions of plaintiff Control Data Corporation's December 10, 1979, opposition to Cubic's November 9, 1979, motion to dismiss counts five and six of plaintiff's first amended and supplemental complaint.

---

1. See *Park-In-Theatre v. Paramount-Richard Theatre*, 7 F.R.D. 723 (D.R.I.1948).

The Order of January 17 stated in part that:

> Defendant's motion is frivolous and is denied. It has the effect, if not the purpose, of prolonging litigation that has already been overlawyered and protracted beyond reason. Future obstruction and delay, by either party, will require consideration of sanctions or disciplinary reference.

The Court has reconsidered this statement in light of all counsel statements at a chambers conference about their deep concern—personally and professionally—over the state of the record as it reflects a comment concerning them. *See* Transcript of Proceedings, February 14, 1980, at 3–7. They contend that they have proceeded in "ultimate good faith and according to the highest standards of the practice of law in litigating this case and every other." *Id.* at 5. Counsel for Cubic have supported their assertions with a 14-page Memorandum of Points and Authorities in support of their Motion to Vacate the January 17, 1980, Order. The Memorandum cites and quotes at length from a 1948 decision of the District Court in Rhode Island,[1] and seeks to distinguish and discredit a 1974 decision of the Court of Appeals for the Second Circuit[2] and related cases relied upon by this Court in its January 17 Order. Finding some authority for their motion to strike, counsel urged that "this is not a simple issue . . . lawyers can in good faith, support either side of the argument. . . ." For these and other reasons relating to their efforts in this case, counsel "offer no apology for attempting to protect the best interests of [their client] in the lawsuit." Transcript of Proceedings, February 14, 1980, at 6, 8.

### B.

It is obvious from the foregoing that counsel and I were not on the same wavelength. My statement was not intended as any reflection on counsel's morality or dili-

---

2. *Freeman v. Midland Bank*, 494 F.2d 1334 (2d Cir. 1974).

gent protection of the interest of their client. Rather, my concern, as expressed in the disputed passage, relates to the duty of all counsel, as officers of the court, to facilitate and not deter the administration of justice in general and the administration of these cases in particular.

The norm for tactical technicalities which was acceptable in 1948 has since come under severe criticism by the public, the bar, and the bench. *See e. g.* Amendments to the Federal Rules of Civil Procedure, 48 U.S. L.W. 4497, 4499–5000 (May 6, 1980) (Powell, J., dissenting); Ebersole, *Discovery Problems: Is Help on the Way?*, 66 A.B.A.J. 50 (1980); Renfrew, *Discovery Sanctions: A Judicial Perspective*, 67 Cal.L.Rev. 264 (1979). The increase in relatively complex civil litigation, such as this case, *see* Ebersole, *supra*, 66 A.B.A.J. at 52, has been accompanied by increased opportunities for delay, obfuscation and expense. A simple corollary to this change in circumstance is a heightened need for counsel to bear in mind, in all aspects of their conduct of litigation, their duty, as officers of the Court, to cooperate in securing the "just, speedy, and inexpensive determination of every action." Rule 1 Fed.R.Civ.P. As the Chief Justice stated in his most recent Annual Report on the State of the Judiciary:

> The responsibility for control [of pretrial processes] rests on both judges and lawyers. Where existing rules and statutes permit abuse, they must be changed. Where the power lies with judges to prevent or correct abuse and misuse of the system, *judges must act.* (Emphasis added)

Address to American Bar Association Mid-Year Meeting, 6 (Feb. 3, 1980). The statement to which counsel objected should be considered in the context of the general concern about judicial administration[3] and a judge's responsibility to create an environment in which lawyers are powerfully motivated to collaborate with the courts to improve administration of particular cases.

## II.

### A.

This case is a laboratory example. It is one of three disputes about WMATA's 1975 decision to take contracts for its subway farecard system away from the Control Data Corporation and award them to Cubic-Western Data. Control Data sued WMATA originally in 1975, and filed a second complaint against WMATA in 1977 to protect a claim for punitive damages. In 1978, Control Data finally sued Cubic. The cases are now set for trial in May, 1981. The blizzard of motions for continuances, to compel or limit discovery, for protective orders, to amend complaints, to dismiss, and for summary judgment and for withdrawal of such a motion, together with voluminous briefs, is evidenced by the attached copy of the docket sheets in the three related cases through February 11, 1980. In addition, there have been at least three extensive opinions by the late Chief Judge Jones and myself and three appeals to and remands from the Court of Appeals.

Concerned by the extraordinary commitment of the resources of the parties, the talents of counsel, and the time of the Court to what is ultimately only a dispute about money, the Court made a vigorous, but unsuccessful, effort to persuade the corporate principals to make a statesmanlike effort to settle the disputes voluntarily. *See, e. g.,* Transcript of Proceedings, October 17, 1979, at 30–31; Transcript of Proceedings, October 27, 1979, at 22–24. Failing in that effort, the Court has set the case for trial, conducted conferences on short notice to resolve recurring discovery disputes, and by the contested statement in the January 17 Order, alerted counsel to their responsibility to concentrate on the main task: bringing these cases to trial and trying them efficiently and well.

### B.

The substantive issues are rather simple, at least compared to a major antitrust case.

---

**3.** It is in this context that the Court has required the parties to comply with a lengthy pretrial order, the purpose of which is to ensure that parties come to grips with the merits of the action early enough to permit serious settlement negotiations and to anticipate logistical problems that might otherwise arise for the first time at trial and impede its progress.

The proof required to resolve the issues remaining after the grant of partial summary judgment in No. 75–0753 should be relatively simple and straightforward also. There is no federal question. Were WMATA (a public body for whom Congress has conferred special jurisdiction on this Court) not a party, jurisdiction would lie in this Court only by diversity. And it seems plain that were WMATA not involved, the cases would have ended long ago by summary judgment. The cases and the discovery continue because WMATA is a public body, and there are allegations that its decisions about the farecard contracts may have been influenced improperly, either by Cubic, Control Data, or both. The presence of these allegations and some evidence gleaned from discovery has persuaded the Court to keep the cases alive so that the allegations of improper conduct can either be proved or put to rest, and the responsibility for any lawlessness in the transfer of WMATA's farecard system contract from Control Data to Cubic fixed.

### C. .

The resolution of these allegations has been seriously impeded by tactical maneuvers of all three parties. For example, Control Data maintained computerized indices of the voluminous files sought for discovery by WMATA; instead of facilitating WMATA's search, Control Data withheld the tapes until confronted with the probability that an order to compel was imminent. *See* Order of January 23, 1980. In addition, Control Data has confected a bewildering variety of pleadings, claims and theories which will undoubtedly melt down at pretrial to a simple issue: Did Cubic win this contract by unlawful influence of WMATA's employees, and if so, is Control Data *in pari dilecto*?

WMATA has contributed its share to the present status of the cases. For example, WMATA appealed Judge Jones' May, 1976, grant of partial summary judgment in No. 75–0753. When the Court of Appeals refused review, WMATA filed a motion in this Court for reconsideration of the Order just refused review by the Court of Appeals. *See* Motion for Reconsideration, March 1, 1979. At the same time, WMATA vigorously opposed discovery on Control Data's punitive damages claims.[4]

Cubic, though a relatively late starter, has followed the example of its adversaries. The docket sheet records Cubic's motions for modification of protective order, to dismiss, for leave to file under seal and for protective order, for summary judgment, and to limit discovery. Cubic has filed, among others, memoranda in opposition to plaintiff's motion to consolidate, and in support of the maintenance of the protective order.

Cubic's motion to dismiss Counts five and six of plaintiff's first amended and supplemental complaint and to vacate the Court's Order of January 17, may well have had some authority to support it, so that it was not, technically "frivolous." But its tangential importance and dilatory effect, in the context of the history of these cases, should be obvious to all[5] and required the admonition delivered by the Court.

It is no coincidence that Cubic's counsel have been vigorous opponents of early trial dates. The parties' commendable development of a mutually agreeable pretrial schedule came only after Court intervention in a series of time-consuming conferences. Even after the schedule had been settled, Cubic's counsel vigorously questioned the

---

4. WMATA commendably abandoned resistance to discovery about allegations of improper payments to its employees after the allegations came under investigation by the U.S. Attorney with inconclusive results.

5. Cubic's motion to dismiss, filed November 9, 1979, followed immediately on the heels of its earlier resistance to CDC's motion for leave to file the amended and supplemental complaint, see Order of October 12, 1979, and its subsequent motion to limit discovery *see* Order of November 7, 1979. While Cubic's motion to dismiss might be viewed as an effort to limit the scope of issues facing the Court, in context its motion must be seen as one element in a pattern designed to avoid reaching the substance of the issues raised in CDC's original and supplemental complaint.

schedule as burdensome, and finally, by agreement, won a further four-month continuance which would have been unnecessary if the parties had tailored the discovery program to essential needs of their clients and the Court. On May 30, speaking in support of the latest postponement of the trial date, counsel for Cubic disclosed to the Court that 19 depositions or parts thereof have already been taken, and that approximately 40 more are contemplated before the close of discovery. Counsel estimated that the remaining depositions will take between 130 and 150 work days to complete. It is difficult to believe that the interests of the parties ultimately will be served by the delay and the extraordinary expense occasioned by this Sisyphean labor.

### III.

As Justice Black stated in commenting upon an earlier revision of the rules "[t]he principal function of procedural rules should be to serve as useful guides to help, not hinder, persons who have a legal right to bring their problems before the courts." 346 U.S. 946 (1954) (separate statement upon adoption of revised Supreme Court rules). Lawyers may be privileged, but they are not obligated, to assert on behalf of a client any position "unless the lawyer is absolutely convinced that the position is frivolous or fraudulent." Renfrew, *supra*, 67 Cal.L.Rev. at 272. In light of the strong challenges to the Court and the bar to realize the goals set in Rule 1, Fed.R.Civ.P., this privilege must compete with a broader obligation to the administration of justice. Reflecting on the pending motion to vacate the January 17, 1980, Order, the Court has decided to deny the motion but to modify the Order so that it will say this:

> The motion is denied. It is the most recent of several failures of the very experienced counsel arrayed in this case affirmatively to honor the goal of the Federal Rules of Civil Procedure: "to secure the just, speedy and inexpensive determination of every action." Rule 1, Fed.R. Civ.P. The support offered by counsel for this motion is old, fragile, and at odds with contemporary views of pleading.

Pursuit of the technical issue raised would divert the Court and counsel from the main business of either settling these cases or efficiently completing discovery and bringing them to trial as promptly and efficiently as possible. Pursuit of the issue could delay settlement by encouraging those whose interest would be served by the belief that delay is feasible. It is not. The Court will hold the parties and counsel responsible by sanctions and by disciplinary reference for any further failures by counsel to conduct reasonable, forthcoming discovery, sensible framing of the narrow issues to be tried, and efficient preparation and trial of them pursuant to the letter and spirit of Rule 1, Fed.R.Civ.P.